UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK P.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-03136-MJD-RLY |
| | ) | |
| ANDREW M. SAUL Commissioner of the Social Security Administration, | ) ) ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Claimant Mark P. applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on October 9, 2015, and supplemental security income ("SSI") on October 4, 2016, alleging an onset date of March 19, 2015, in both. [Dkt. 10-2 at 38.] His DIB application was initially denied on April 6, 2016, [Dkt. 10-5 at 4], and upon reconsideration on September 21, 2016, [Dkt. 10-5 at 14]. Administrative Law Judge Gladys Whitfield (the "ALJ") conducted a hearing on July 17, 2018. [Dkt. 10-3 at 4-42.] The ALJ issued a decision on August 1, 2018, concluding that Claimant was not entitled to receive benefits. [Dkt. 10-2 at 35.] The Appeals Council denied review on May 24, 2019. [Dkt. 10-2 at 2.] On July 26, 2019,

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

Claimant timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c).  [Dkt. 1.]

## I. STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002).  "The statutory definition of 'disability' has two parts.  First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity.  Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability.  The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).  For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted).  "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four.  Once step four is satisfied, the

burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II. BACKGROUND

Claimant was 41 years of age at the time he alleged his disability began. [Dkt. 10-6 at 2.] He has completed high school and earned a technical degree in heating, ventilation, and air

conditioning.  [Dkt. 10-3 at 6-7.]  He previously worked as a factory worker and was self-employed.  [Dkt. 10-7 at 5.][2]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Claimant was not disabled.  [Dkt. 10-2 at 50.]  Specifically, the ALJ found as follows:

- Claimant last met the insured status requirements of the Social Security Act on September 30, 2017 (his date last insured or "DLI").[3]  [Dkt. 10-2 at 40.]

- At Step One, Claimant had not engaged in substantial gainful activity[4] since March 19, 2015, the alleged onset date.  [Dkt. 10-2 at 40.]

- At Step Two, he had "the following severe impairments: congenital anomalies of the heart with aortic insufficiency; cervical degenerative disc disease with radiculitis; osteoarthritis with chronic pain; hearing loss; anxiety; and depression."  [Dkt. 10-2 at 41 (citation omitted).]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [Dkt. 10-2 at 41.]

- After Step Three but before Step Four, Claimant had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for up to six hours and sit for up to six hours, each in an eight-hour workday with normal breaks; he can alternate positions for one to two minutes every 30 minutes; he can never climb ladders, ropes, or scaffolds, but can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; he can occasionally perform bilateral overhead reaching; he should avoid constant exposure to extreme cold, heat, wetness/humidity, vibration, environmental irritants/poorly ventilated areas; he should avoid all use of hazardous

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Claimant must prove the onset of disability on or before his DLI to be eligible for DIB.  *See Shideler v. Astrue*, 688 F.3d 308, 311 (7th Cir. 2012); *see also* 20 C.F.R. § 404.131.  Recognizing that Claimant also had a claim for SSI, the ALJ considered the period at issue for the concurrent claims, beginning with Claimant's alleged onset date through the date of the decision.  [Dkt. 10-2 at 38.]

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

4

- moving machinery and exposure to unprotected heights; the work should not involve complex written or verbal communication; driving should not be required to perform a function of the job; he is able to understand, remember, and carry out simple work with simple tasks and simple instructions (i.e., unskilled); he can work in low stress settings that do not require intense social interaction; he can tolerate routine workplace changes; the noise level should not exceed Level 3 (moderate); there should not be any fast-paced production requirements, tandem tasks, or teamwork involved in the work; he can have occasional superficial interaction with the public; and he can have occasional interaction with co-workers and supervisors." [Dkt. 10-2 at 44.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Claimant's RFC, he was incapable of performing any of his past relevant work as an aluminum smelter and spot welder. [Dkt. 10-2 at 48]

- At Step Five, relying on the VE's testimony and considering Claimant's age, education, work history, and RFC, he was capable of making an adjustment to other work with jobs existing in significant numbers in the national economy in representative occupations such as a collator operator, router, and lab sample carrier. [Dkt. 10-2 at 49-50.]

### III. DISCUSSION

Claimant makes three assignments of error, that the ALJ did not: (1) properly evaluate whether Claimant's congenital heart disease and cervical spine impairment met or equaled a listing, (2) include RFC limitations related to Claimant's carpal tunnel syndrome and cervical spine impairment, and (3) accommodate Claimant's moderate limitations of concentration, persistence, or pace in the RFC finding.  The Court will address the issues as necessary to resolve the appeal, beginning with an issue that is dispositive.

**A. Right Hand Use**

Claimant contends that his combined carpal tunnel syndrome and cervical degenerative disc disease limited the functional use of his hand. [Dkt. 12 at 15.] He asserts that the ALJ erred in finding that his carpal tunnel syndrome was not a severe impairment at Step Two. [Dkt. 12 at 16.] He also asserts that the ALJ impermissibly relied on the outdated assessment of the state agency reviewing consultant. [Dkt. 12 at 17.]

5

The Seventh Circuit has held that "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) *as amended on reh'g* (Apr. 13, 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny)).

The Court agrees that the ALJ erred by relying on the reviewing consultant's assessment. The most recent assessment by a reviewing consultant was completed on September 21, 2016. [Dkt. 10-4 at 26.] The consultant assessed that Claimant would be capable of a reduced range of light exertional work, including only occasional overhead reaching with the right upper extremity. [Dkt. 10-4 at 23-25.] Claimant is right hand dominant. [Dkt. 10-3 at 17.] On May 31, 2016, an examination of Claimant's right hand had demonstrated a positive Tinel's sign in the median distribution consistent with carpal tunnel syndrome. [Dkt. 10-12 at 28.] An electromyography and nerve conduction study completed on June 30, 2016, indicated "[m]oderately severe right median neuropathy at the wrist (carpal tunnel syndrome)." [Dkt. 10-12 at 68-69.] On July 11, 2016, a repeat examination continued to show a positive Tinel's sign. [Dkt. 10-12 at 59-60.] The reviewing consultant noted the relevant findings but stated that Claimant's "[c]urrent hand issues may not met [sic] durational requirements[.]" [Dkt. 10-4 at 26]; *see* 20 C.F.R. § 404.1509 (an impairment must last for a continuous period of twelve months).

Claimant continued to have issues with the use of his dominant hand. On August 14, 2017, he had a pain management evaluation because of alleged neck and right arm pain with

numbness that sometimes extended into his fingertips. [Dkt. 10-14 at 26.] The examination showed intermittent fasciculations in the right hand with intact but slightly diminished strength in the right upper extremity. [Dkt. 10-14 at 27.] The treating physician's assessment included concern that there was underlying cervical neuritis/radiculitis and diagnostic imaging was ordered. [Dkt. 10-14 at 28.] An MRI taken on July 6, 2018, confirmed that Claimant's cervical spine had a congenital fusion at C3-4, foraminal stenosis on the right at C6-7, facet joint degeneration, narrowed disc space, and multilevel, equivocal alteration of the spinal cord signal. [Dkt. 10-15 at 3-4.]

     Despite the updated evidence establishing a newly-diagnosed potential etiology and the persistence of symptoms with ongoing treatment, the ALJ gave "significant weight" to the outdated consultants' assessments and "greater weight" to the most recent of those assessments. [Dkt. 10-2 at 46.] The ALJ included carpal tunnel syndrome in a list of impairments that were found to not be severe but did not explain the basis of that finding. [Dkt. 10-2 at 41.] As noted above, the ALJ found that the updated evidence concerning Claimant's cervical spine established a severe impairment. The ALJ gave lip service to the fact that the expert consultants had not reviewed the evidence submitted at the hearing level. [Dkt. 10-2 at 46.] The ALJ explained that "[c]onsidering the evidence in the light most favorable to the claimant, [she] assigned exertional, postural, manipulative, and environmental limitations in the residual functional capacity above, including limiting exposure to wetness and humidity, to account for the claimant's subjective complaints and the combined effect of his impairments." [Dkt. 10-2 at 46.] However, the ALJ's RFC finding differed from the assessment of the most recent review in terms of exertional and manipulative limitations only by including a sit/stand option and limiting overhead reaching with both arms rather than just the right. Neither change was relevant to the ongoing issues with the

use of Claimant's right hand. The ALJ's written decision does not provide a relevant explanation as to why those issues had no effect on Claimant's RFC. More important to the Court's analysis, the updated evidence was not submitted to expert review. Accordingly, remand is necessary for further consideration of Claimant's RFC, particularly concerning the use of his right hand.

**B. Moderate Limitations of Concentration, Persistence, or Pace**

Claimant also contends that the ALJ's mental RFC finding and the corresponding description of those limitations given to the VE at Step Five did not fully account for Claimant's moderate limitations of concentration, persistence, or pace. [Dkt. 12 at 19.] The Court agrees.

Regardless of the basis, a hypothetical posed to the VE "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994); *Indoranto v. Barnhart,* 374 F.3d 470, 473-74 (7th Cir. 2004). "Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (citing *Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)). "Although it is not necessary that the ALJ use the precise terminology of 'concentration,' 'persistence,' or 'pace,' we will not assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record."[5] *Id.* at 814 (citing *Yurt*, 758 F.3d at 857).

When assessing the "paragraph B" criteria, the ALJ found that Claimant had moderate limitations with concentration, persistence, or maintaining pace. [Dkt. 10-2 at 43.] The limitations identified in the "paragraph B" criteria are used to rate the severity of mental

---

[5] There is no evidence that the VE relied on anything more than the limitations described to him during the hearing. The progressive hypothetical questions did not describe any limitations not included in the ALJ's RFC finding. [*See* Dkt. 10-3 at 33-38.]

impairments at Steps Two and Three. 20 C.F.R. § 404.1520a(d)-(e). However, the RFC finding used at Steps Four and Five requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the listings. SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *4. Claimant does not challenge the paragraph B findings; he challenges the sufficiency of the more detailed assessment.

      The ALJ gave "great weight" to the verbatim assessments of the reviewing psychological consultants. [Dkt. 10-2 at 47.] The most current assessment included that Claimant was moderately limited in his ability to: (1) maintain attention and concentration for extended periods, and (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [Dkt. 10-4 at 27.] However, the ALJ's RFC finding did not indicate that there was any limitation with those specific abilities. *See Varga*, 794 F.3d at 814 (the RFC finding and resulting hypothetical to the VE must include the moderate limitations in concentration, persistence, or pace attributed to the claimant by the state agency consultant(s) in Section I of the Mental Residual Functional Capacity Assessment form).

      As noted above, the ALJ did limit Claimant to no fast-paced production requirements. The Seventh Circuit has "previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019) (citing *Moreno*, 882 F.3d at 730; *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016)). The Seventh Circuit found in *Varga* that the ALJ's failure to define "fast paced production" was problematic. 794 F.3d at 815. In *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) (citations omitted), the Seventh Circuit

9

explained the "holding in *Varga* did not root itself in vagueness, though. To be sure, we noted that the phrase 'fast paced production' had more than one meaning. But we reversed because the ALJ failed to include the claimant's significant problems concentrating in the RFC determination." Similarly, here, the ALJ failed to address Claimant's significant problems with attention, concentration, and pace.

Moreover, the Court finds an evidentiary basis in the record for the expert consultants' assessments identified above, such that the error was not harmless. The psychological consultative examiner observed that Claimant had "trouble manipulating information in working memory." [Dkt. 10-11 at 71.] "His thoughts were tangential and circumstantial." [Dkt. 10-11 at 72.] "He had some trouble with focus and concentration. His thoughts were slow and labored during the cognitive tasks." [Dkt. 10-11 at 72.] Accordingly, further consideration of Claimant's mental RFC is also necessary on remand to assure that Claimant's full limitations are adequately conveyed to the VE.

## C. Other Arguments

Having found that remand is necessary for the reasons detailed above, the Court declines to analyze Claimant's remaining arguments. The Court has reviewed Claimant's listing arguments and does not find that Claimant has demonstrated that the evidence met or equaled the specific requirements of the listings identified such that the Court would consider remanding with instructions to award benefits. Accordingly, the appropriate disposition is a remand for further consideration of the issues identified above. However, Claimant is free to develop any listing arguments on remand.

## IV. CONCLUSION

For the reasons explained above, the Court **REVERSES** the ALJ's decision denying Claimant's benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C.§ 405(g) (sentence 4) as detailed above.

SO ORDERED.

Dated:  19 JUN 2020

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record
via email generated by the Court's ECF system.